John W. CASTRO, Sr., Petitioner,

v.

The STATE of Oklahoma, Respondent.

No. F–84–378.

Court of Criminal Appeals of Oklahoma.

Nov. 24, 1987.

Certiorari Denied March 21, 1988.

See 108 S.Ct. 1248.

---

40. *Smith v. Smith,* Okl., 652 P.2d 297 [1982].

41. *Holdsworth v. Holdsworth,* Okl., 720 P.2d 326 [1986].

Thomas Purcell, Asst. Appellate Public Defender, Norman, for petitioner.

Robert A. Ravitz, Oklahoma County Public Defender, Leeann Jones Peters, Chief of Appellate Div., Oklahoma County Public Defender, Oklahoma City, amicus curiae.

## OPINION ON REHEARING

PARKS, Judge:

Petitioner filed a petition for rehearing in this Court in the above-styled cause. Petitioner primarily challenges the validity of his death sentence, and we limit our discussion to the issues we deem relevant to that issue, having found that the other assignments were properly addressed and decided in our original opinion. The Oklahoma County Public Defender's Office has filed an *amicus curiae* brief, which we have used only insofar as it is relevant to the issues raised by petitioner.

### I.

The first issue presented is whether petitioner's death sentence must be vacated because one of the two statutory aggravating circumstances found by the jury was invalidated by this Court on direct appeal, even though the other aggravating circumstance was upheld. According to the United States Supreme Court, the answer depends on the function of the jury's finding of aggravating circumstances under Okla-homa's capital sentencing statute, and on the reasons why the aggravating circumstance at issue in this particular case was found to be invalid. *See Barclay v. Florida,* 463 U.S. 939, 103 S.Ct. 3418, 3426, 77 L.Ed.2d 1134 (1983); *Zant v. Stephens,* 462 U.S. 862, 864, 103 S.Ct. 2733, 2736, 77 L.Ed.2d 235 (1983). *Accord Andrews v. Shulsen,* 802 F.2d 1256, 1263 (10th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1964, 95 L.Ed.2d 536 (1987). The United States Supreme Court addressed this question under Georgia law in *Zant* and under Florida law in *Barclay* and *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).

### A.

We address first the function of the jury's finding of an aggravating circumstance under 21 O.S. 1981, §§ 701.10–701.-11. Although the punishment for first degree murder in Oklahoma shall be life imprisonment or death under 21 O.S. 1981, § 701.9, the sentencer, whether judge or jury, cannot impose the penalty of death unless it unanimously designates in writing that it has found at least one statutory aggravating circumstance beyond a reasonable doubt. *See* 21 O.S. 1981, § 701.11. In addition, under Section 701.11, the sentencer is required to weigh aggravating and mitigating circumstances, because the death penalty shall not be imposed if the sentencer finds that aggravating circumstances are outweighed by mitigating circumstances. Oklahoma's capital sentencing scheme is thus different from Georgia's insofar as the sentencer in Oklahoma is required to balance aggravating and mitigating circumstances in determining whether a sentence of death is appropriate. *See Zant,* 462 U.S. at 873–74, 103 S.Ct. at 2741. In fact, the Court expressly noted in *Zant* that it did "not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory and mitigating circumstances in exercising its discretion whether to impose the death penalty." *Zant,* 462 U.S. at 890, 103 S.Ct. at

2750. Thus, *Zant* does not definitively answer the question presented.

Following *Zant*, however, the United States Supreme Court decided *Barclay* and *Goode*. Florida, like Oklahoma, uses aggravating circumstances to guide the discretion of the sentencer and "requires the sentencer to balance statutory aggravating circumstances against all mitigating circumstances...." *Barclay*, 463 U.S. at 954, 103 S.Ct. at 3427. In *Barclay*, the United States Supreme Court approved the Florida Supreme Court's application of a harmless-error rule whereby the invalidation of one aggravating circumstance will be held to be harmless (and thus resentencing not required), so long as no mitigating circumstances were present. *Barclay*, 463 U.S. at 955, 966 n. 12, 103 S.Ct. at 3427, 3428 (plurality of four and two justices concurring). Following *Barclay*, the Court went a step further and refused to vacate a death sentence in a case where the Florida Supreme Court had held that the sentencer's improper consideration of an aggravating circumstance did not invalidate a death sentence or constitutionally impermissibly infect the balancing process where the Florida Supreme Court's independent reweighing of the aggravating and mitigating circumstances determined that the death penalty was appropriate, after excluding the improper aggravating circumstance from consideration. *See Wainwright v. Goode*, 464 U.S. 78, 86–87, 104 S.Ct. 378, 383, 78 L.Ed.2d 187 (1983). Unlike *Barclay*, 463 U.S. at 944, 103 S.Ct. at 3422, where no mitigating circumstances were present, the sentencer in *Goode* found two mitigating circumstances. *Goode*, 464 U.S. at 80, 104 S.Ct. at 380. The per curiam opinion in *Goode*, stated that "[w]hatever may have been true of the sentencing judge, there is no claim that in conducting its independent reweighing of the aggravating and mitigating circumstances the Florida Supreme Court considered [an invalid aggravating circumstance]." *Goode*, 464 U.S. at 86–87, 104 S.Ct. at 383. Accordingly, the death sentence was constitutionally permissible.

■ We find that *Barclay* and *Goode*, when read together, make clear that a state appellate court may constitutionally independently reweigh aggravating and mitigating circumstances to determine whether a death sentence must be vacated as arbitrary and capricious, in light of a finding on appeal that a particular aggravating circumstance, which was considered by the sentencer, was not supported by sufficient record evidence. We believe that this independent reweighing under such circumstances provides a rational safeguard for the constitutional requirement "that death penalty statutes be structured so as to prevent the penalty from being administered in an arbitrary and unpredictable fashion." *California v. Brown*, — U.S. ——, ——, 107 S.Ct. 837, 839, 93 L.Ed.2d 934 (1987). We further find that the foregoing analysis supports the constitutionality of this Court's recent decision in *Stouffer v. State*, 742 P.2d 562 (Okla.Crim. App.1987) (Opinion on Rehearing), holding that an independent reweighing of aggravating and mitigating circumstances is implicitly necessary to a determination that a death sentence be factually substantiated and valid pursuant to this Court's duty to conduct a mandatory capital sentencing review under 21 O.S. 1981, § 701.13(F). As the plurality stated in *Barclay*, "[t]here is no reason why the [state court] cannot examine the balance struck by the [sentencer] and decide that the elimination of improperly considered aggravating circumstances could not possibly affect the balance." *Barclay*, 463 U.S. at 958, 103 S.Ct. at 3429.

### B.

■ We now turn to a consideration of the reasons why the aggravating circumstance at issue in this particular case was found to be invalid. Here, we found that the medical examiner's preliminary hearing testimony was improperly admitted during the guilt-innocence stage of the trial, because the State had failed to meet the requirement of due diligence in making a good-faith effort to obtain Dr. Dibdin's presence at trial. *Castro v. State*, 745 P.2d 394, 401 (Olka.Crim.App.1987). Dr. Dibdin's preliminary hearing testimony, which was read to the jury during the guilt-inno-

cence stage, and incorporated by reference during the sentencing stage, was primarily limited to describing the nature and extent of the injuries suffered by the victim, Rhonda Pappan, and listing the cause of death as multiple stab wounds. (PH Tr. 80–92) At one point, Dr. Dibdin did describe a stab wound to the lung cavity as causing "a tremendous degree of shock and pain...." Contrary to the prosecutor's comments during closing argument, which issue was sufficiently addressed in our original opinion, the medical examiner never testified that the victim died a "slow" death. Although we found that the medical examiner's preliminary hearing testimony was improperly admitted during the guilt-innocence stage as a violation of the principles enunciated in *Barber v. Page*, 390 U.S. 719, 724–25, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968), *see Castro, supra*, the Federal Constitution "does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, so long as that information is relevant to the character of the defendant or the circumstances of the crime." *Barclay*, 463 U.S. at 967, 103 S.Ct. at 3433 (Stevens, J., concurring). *See Gregg v. Georgia*, 428 U.S. 153, 164, 196–97, 206, 96 S.Ct. 2909, 2920–21, 2936, 2940–41, 49 L.Ed.2d 859 (1976). "What is important at the selection stage is an *individualized* determination on the basis of the character of the individual and the circumstances of the crime." *Zant*, 462 U.S. at 879, 103 S.Ct. at 2743–44 (emphasis in original). Here, the medical examiner's testimony was directly related to the existence or nonexistence of the heinous, atrocious or cruel aggravating circumstance. On the basis of the foregoing, the medical examiner's testimony was arguably relevant and admissible during the sentencing stage under *Zant* and *Barclay*, to enable the jury to make an individualized determination. In any event, we invalidated the heinous, atrocious or cruel aggravating circumstance because, excluding the medical examiner's preliminary hearing testimony, there was simply not sufficient evidence from which a rational trier of fact could find the existence of that aggravating circumstance beyond a reasonable doubt. It is significant that the jury, in evaluating the existence of the heinous, atrocious or cruel aggravating circumstance, did not consider any constitutionally protected behavior to be an aggravating circumstance, nor does petitioner challenge the accuracy of the medical examiner's preliminary hearing testimony. *See Barclay*, 463 U.S. at 956, 103 S.Ct. at 3428. Having examined the entire record, and having reweighed the evidence which supported the continuing threat aggravating circumstance against the evidence of mitigating circumstances, we find the sentence of death factually substantiated and valid under 21 O.S. 1981, § 701.13(F). We are not persuaded, on this record, that there is any reasonable probability that the jury would have reached a different result had the medical examiner's testimony been excluded during the guilt-innocence stage. Any error could properly be termed "harmless" in light of the admission of the petitioner's voluntary confession during the guilt-innocence stage, and the evidence supporting the continuing threat aggravating circumstance, including the petitioner's confession on the stand during the second stage that he had stabbed Pappan to death and had killed Beulah Cox in another incident, and where, as noted earlier, the medical examiner's testimony was arguably relevant and admissible during the second stage to enable the jury to make an individualized determination of the relevant circumstances of the crime under *Zant* and *Barclay*.

### C.

Accordingly, for the foregoing reasons, we reject appellant's claim that this Court cannot independently reweigh evidence of aggravation and mitigation in determining the validity of a death sentence, in cases where an aggravating circumstance found by the sentencer has been invalidated on appeal due to insufficient evidence. Furthermore, we reject petitioner's argument that if this Court "has the ability to reweigh the evidence itself, then there is no reason to ever send a case to the trial court, which makes 21 O.S. 1986 Supp. § 701.13 a complete nullity." Title 21 O.S. Supp.1985, § 701.13(E)(2), simply *autho-*

*rizes* this Court to remand capital cases for resentencing proceedings, but does not purport to mandatorily *require* a remand for resentencing for errors found to exist in the sentencing stage on direct appeal. Just because we find in the case at bar that any possible error in the admission of the medical examiner's preliminary hearing testimony could not possibly have affected the balance in the instant case, does not mean that resentencing would never be required in a different case under different circumstances. For all of the foregoing reasons, we conclude that the sentence of death was constitutionally permissible in the instant case.

## II.

■ Next, we wish to address petitioner's sixth assignment in which he argues that the application of the principles of *Stouffer* to the instant case violates the federal prohibition against *ex post facto* laws. The statutory language upon which this Court relied for its authority to conduct an independent reweighing of aggravating and mitigating circumstances on appeal, is set forth in 21 O.S. 1981, § 701.13(F), and became effective July 24, 1976. The murder in this case occurred on June 6, 1983. At the outset, it thus appears that no possible *ex post facto* violation is present, as the statutory language relied upon for the authority of this Court to independently reweigh aggravating and mitigating circumstances was in effect prior to the time petitioner committed the crimes of which he stands convicted. The *ex post facto* concern raised by petitioner apparently arises because this Court, without citing Section 701.13(F), previously refused to speculate on the effect of an invalid aggravating circumstance and, until *Stouffer*, did not independently reweigh aggravating and mitigating circumstances. *See Boutwell v. State*, 659 P.2d 322, 329 (Okla.Crim.App.1983). The issue presented is whether this Court's judicial construction of Section 701.13(F), as set forth in *Stouffer v. State*, 742 P.2d 562, 564 (Okla.Crim. App.1987) (Opinion on Rehearing), and as applied retroactively, constitutes a violation of the *ex post facto* clause of Article I, § 10 of the Federal Constitution.

In *Bouie v. City of Columbia*, 378 U.S. 347, 353–54, 84 S.Ct. 1697, 1702–03, 12 L.Ed.2d 894 (1964), the United States Supreme Court stated that:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates* a *crime*, or makes it *greater* than it was, when committed.' (citations omitted) ... If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

*Bouie*, 378 U.S. at 353–54, 84 S.Ct. at 1702–03 (emphasis in original) (citations omitted) (footnote omitted). *Bouie* is distinguishable, as the principles set forth in *Stouffer*, concerning the scope of this Court's mandatory sentence review, do not criminalize conduct which was innocent when done, nor do they make the crime greater than it was when committed. Unlike *Bouie*, where the South Carolina Supreme Court broadened the statutory definition of the crime charged, in the instant case, this Court did not enlarge the statutory definition of first degree murder.

Moreover, procedural changes in a statutory capital sentencing scheme which simply alter "the methods employed in determining whether the death penalty was to be imposed" is not *ex post facto* "[e]ven though it may work to the disadvantage of a defendant." *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977). Similarly, we find that our holding in *Stouffer*, that an independent reweighing of aggravating and mitigating circumstances is implicit to our statutory duty to determine the factual sub-

stantiation of the verdict and the validity of death sentences under 21 O.S. 1981, § 701.13(F), simply alters the modes of procedure in determining the validity of a death sentence on direct appeal. The United States Supreme Court has stated that:

> Just what alterations of procedure will be held to be of sufficient moment to transgress the [ex post facto] prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation ... and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance....

*Beazell v. Ohio*, 269 U.S. 167, 171, 46 S.Ct. 68, 69, 70 L.Ed. 216 (1925) (citations omitted). As was true in *Beazell*, the legal principles set forth in the *Stouffer* decision do not deprive the petitioner of a defense which was previously available, or change the legal definition of the offense, or the punishment to be meted out, or affect the criminal quality of the act charged, or change the questions which may be considered by the jury in establishing guilt or innocence. Furthermore, an independent reweighing of aggravating and mitigating circumstances by this Court is intended as another procedural safeguard under our mandatory sentence review of death sentences to ensure that a sentence of death has not been arbitrarily imposed. This independent reweighing will not necessarily be to the detriment of the defendant, but will instead make appellate review more meaningful. As was true in *Dobbert, supra,* the petitioner here has not been subjected to a change in the quantum of punishment attached to first degree murder. The following quote summarizes our conclusion that the change in appellate review of capital sentences enunciated in *Stouffer* are properly termed procedural and do not violate the *ex post facto* clause of the Federal Constitution:

> The crime for which the present defendant was [charged], the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute.

*Dobbert,* 432 U.S. at 294, 97 S.Ct. at 2298–99 (Quoting *Hopt v. Utah,* 110 U.S. 574, 589–90, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)).

Having examined the other assignments raised in the petition for rehearing, we have either found them without merit or have found that they were sufficiently addressed in the original opinion and do not require futher discussion. Accordingly, the petition for rehearing seeking modification of the sentence of death is DENIED.

JOHN W. CASTRO, SR., filed a petition for rehearing in Kay County Case No. CRF–83–130. DENIED.

BRETT and BUSSEY, JJ., concur.