Sean Richard **SELLERS**, Appellant,

v.

**STATE of Oklahoma, Appellee.**

No. F–86–731.

Court of Criminal Appeals of Oklahoma.

April 5, 1991.

Rehearing Denied May 8, 1991.

---

Lee Ann Jones Peters, Oklahoma County Public Defender's Office, Oklahoma City, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Diane Hammons, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

Appellant, Sean Richard Sellers, was convicted in the District Court of Oklahoma County, Case Nos. CRF–86–1231 and CRF–86–1232, of three charges of Murder in the First Degree. The jury recommended a sentence of death for each, and the District Court entered judgments and sentences accordingly. The case comes before this Court on direct appeal.

## STATEMENT OF FACTS

The record reveals that on September 8, 1985, a clerk at a convenience store in Oklahoma City was found shot to death. At trial, the State presented the testimony of Richard Howard, who claimed that he had been with appellant on September 8, 1985, and had observed appellant shoot the clerk with a gun owned by Howard's grandfather. Howard further testified that appellant claimed he killed the clerk because "he wanted to see what it feels like to kill somebody".

On March 5, 1986, the bodies of appellant's mother and stepfather were found shot to death in their bed. Howard testified that appellant came to his house early that morning and confessed the murders to him. Howard claimed that he suggested to the appellant that they hide the murder weapon, a .44 caliber revolver owned by appellant's stepfather, in Howard's house. Police investigation showed that the guns described by Howard were, in fact, used to fire the fatal shots. Finally, Howard testified that appellant devised a plan whereby he and appellant would return to appellant's house later that morning, "discover" the bodies, and call the police.

## I. ISSUES RELATED TO JURY SELECTION

### A.

Appellant claims that he was denied his right to trial by a jury composed of a fair cross section of the community. On the morning of trial, appellant filed a motion to quash the entire jury panel, asserting that use of voter registration records resulted in systematic exclusion of minorities from juries in Oklahoma County. Appellant sought to support this assertion by a request to "incorporate by reference" testimony presented before the trial judge in wholly unrelated cases. The State offered no objection, and the trial judge allowed this procedure.

■ On appeal, appellant has "cross-referenced" this record to the records on appeal in the other cases. Rule 3.3, 22 O.S. 1981, Ch. 18 App., Rules of the Court of Criminal Appeals, permits cross referencing of appeal records, but does so only in the context of co-defendants filing separate appeals. The procedure used here was highly irregular and improper. Indeed, but for the fortuitous circumstance that the other cases resulted in convictions and appeals contemporaneous to this one, this Court would have had no record to review. In light of the gravity of this case, we have reviewed and considered the evidence presented in the other cases. However, in all future cases, the substance of stipulations of fact or expected testimony should be reduced to writing and made a part of the record, or recited in open court and recorded by the court reporter so that it can be transcribed in the event of appeal.

■ The Supreme Court has established guidelines to review claims such as the one presented by appellant.

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the

number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). On the basis of 1980 census data, appellant argued that identifiable groups of African Americans, native Americans, Asians, and other racial minorities are present in Oklahoma County. However, appellant presented no evidence showing that the representation of these groups in venires from which juries are selected is not fair and reasonable *in relation to* the number of such persons in the community. Appellant failed to establish the second prong of a prima facie violation, and we find no error.

### B.

■ Additionally, appellant asserts that the fair-cross-section requirement was violated by operation of 38 O.S.1981, § 28(A), which permits persons over seventy years of age to decline jury service without showing hardship or other exclusion. Assuming without admitting that appellant had satisfied his burden under the first prong of *Duren, supra, see also Moore v. State,* 736 P.2d 161, 165–66 (Okl.Cr.1987) *cert. denied* 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987), we note the language of the Supreme Court in *Taylor v. Louisiana,* 419 U.S. 522, 537–38, 95 S.Ct. 692, 701, 42 L.Ed.2d 690 (1975):

> The fair-cross-section principal must have much leeway in application. The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists of panels are representative of the community.

We find that the age provision supplied in 38 O.S.1981, § 28(A) provides a reasonable exemption from jury service. The higher rate of infirmities suffered by the elderly and the likelihood of substantial hardship if they are compelled to travel or serve lengthy jury terms justify the exemption. Moreover, appellant has not shown that "the jury lists of panels" are not representative of the community.

### C.

■ Appellant next contends that the trial court erred by refusing to allow individual sequestered voir dire of the veniremen. In *Foster v. State,* 714 P.2d 1031, 1037 (Okl.Cr.1986), *cert. denied,* 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986), we noted that:

> [a]lthough such a practice may be allowed by a trial judge, it is an extraordinary measure.... Unless the danger of prejudicing the jurors by exposure to damaging information is a grave problem or some special purpose would be served, it is unlikely that individual voir dire would be justified. We find no abuse of discretion in not allowing the procedure.

(Citations omitted.) Nor do we find any abuse of discretion in this case.

### D.

■ Appellant next asserts that his rights under the Sixth and Eighth Amendments were violated when the trial judge refused to permit voir dire to determine prospective jurors' attitudes concerning youth as a mitigating factor. The extent of voir dire rests largely in the discretion of the trial court. *VanWoundenberg v. State,* 720 P.2d 328, 332 (Okl.Cr.1986) *cert. denied,* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). While it is proper to inquire whether a prospective juror is willing to consider the alternate punishments prescribed for First Degree Murder, we find no abuse of discretion in refusing to permit inquiry into views on particular mitigating circumstances. To permit such questioning would make voir dire an open forum for discussion of any circumstances accompanying the murder, both mitigating and aggravating. The great potential to improperly influence the jury weighs strongly in support of the trial court's ruling in this case.

While a criminal defendant in a State court is guaranteed an impartial jury by the Sixth Amendment, *see Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and as a matter of process, *see Irvin v. Dowd,* 366 U.S. 717, 81

S.Ct. 1639, 6 L.Ed.2d 751 (1961), the Constitution does not always entitle a defendant to propound questions during voir dire specifically directed to matters that conceivably might prejudice veniremen against him. *Ristaino v. Ross*, 424 U.S. 589, 594, 96 S.Ct. 1017, 1020, 47 L.Ed.2d 258 (1976). As in *Ristaino*, the State in this case was able to fulfill its obligation to impanel an impartial jury with less than a specific inquiry into appellant's area of concern, and this argument must fail.

### E.

■ Appellant next asserts that the trial court committed reversible error by excusing three prospective jurors who expressed concerns about imposing the death penalty. The proper inquiry when deciding whether to excuse a potential juror for his or her views on capital punishment is whether those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Wainwright v. Witt*, 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841 (1985). Although the jurors excused in this case gave confusing and sometimes conflicting answers to questions asked by the court and counsel, the record when read in context supports a finding that each of them would have been prevented or substantially impaired from performing their duties as a result of their views on capital punishment. The trial judge, who was present to observe the conduct and demeanor of the panel during voir dire, did not abuse his discretion by excusing any of the jurors for cause.

### II. FIRST STAGE EVIDENCE

### A.

■ Appellant claims that the trial court committed reversible error by excluding evidence material to his defense. Appellant sought to introduce testimony that an Oklahoma City girl, with no connections to this case, had become involved in satanism and had received a note signed by someone else believed to be involved in satanism. The note informed the girl that she would kill her parents and that she would be kidnaped. Her parents placed her in a mental institution for approximately two months to undergo therapy in connection with the satanic influences in her life. The trial court excluded the evidence, ruling that it was irrelevant. Appellant claims that the evidence would have been relevant to show the presence and influence of satanism in Oklahoma City.

We find that the court ruled properly. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence. 12 O.S.1981, § 2401. The proffered evidence was not relevant within this definition. Evidence which is not relevant is not admissible. 12 O.S.1981, § 2402. Furthermore, even if the presence and influence of satanism in the Oklahoma City metropolitan area were a fact of consequence, appellant was able to demonstrate that fact through several other witnesses who testified concerning satanism in the area and appellant's personal involvement in the occult. Thus, evidence concerning the other girl could have been excluded under 12 O.S.1981, § 2403 as cumulative evidence.

■ The trial court also excluded appellant's exhibit 18, a spiral bound school notebook, which he claims showed his involvement in satanism. We agree with the trial judge that this constituted inadmissible hearsay. Additionally, the vast majority of the notebook contained appellant's high school history, English, and geometry notes and homework; matters which were completely irrelevant. We note further that many portions of the notebook were admitted without objection from the State. There was no error in excluding the exhibit, nor could appellant have suffered any prejudice.

■ Appellant also claims that the trial court improperly prevented him from eliciting a statement he made to his girlfriend. On the day appellant's parents were killed, appellant purportedly told his girlfriend, "Baby, I couldn't do it, not even for you." Appellant claims that it should have been

admitted as a statement of his then existing state of mind. 12 O.S.1981, § 2803(3). We disagree. Specifically excluded from that exception are "statement[s] of memory or belief to prove the fact remembered or believed...." This is such a statement, and it was properly excluded.

■ Appellant also asserts that the trial court improperly prevented him from questioning Richard Howard concerning threats Howard had made to kill his girlfriend's father. Appellant speculated that Howard had been angry, retrieved a gun to kill the father, was unsuccessful in his attempt to confront the father, and in his frustration had gone to the convenience store and shot the clerk instead. This would show that Howard, not appellant, had committed the first homicide.

We agree with the trial court's ruling. Any threats that Howard may have made were wholly irrelevant to this case. As such, they were inadmissible. 12 O.S.1981, § 2402. Additionally, Howard's conflict with the father was clearly demonstrated by testimony that Howard could not obtain permission to marry his girlfriend. Appellant was able to argue his theory to the jury, and no prejudice could have resulted. Even if error occurred, it could not serve as a basis for reversal. *See Harrall v. State*, 674 P.2d 581, 583 (Okl.Cr.1984).

### B.

■ Prior to trial, appellant informed the State that he would not be relying upon an insanity defense. However, after the State had rested its case-in-chief and appellant had presented the testimony of eleven witnesses, appellant informed the trial court of his change in position and introduced evidence of insanity. After appellant rested, the State was permitted to rebut appellant's evidence, over appellant's objection, with the testimony of Dr. Herman Jones. Dr. Jones had examined appellant in connection with "reverse certification" proceedings in this case.

Appellant asserts that 10 O.S.1981, § 1127(a) precluded the State's use of Dr. Jones' testimony. We must dismiss the assertion, since § 1127(a) deals with records of a "child", and a person prosecuted under our "reverse certification" statute, § 1104.2, is not a "child" as defined in § 1101(1). Moreover, § 1127(d) expressly provides:

(d) Subsections (a) and (b) of this section shall not apply to the use, confidentiality and disposition of the records and fingerprints of a person who is sixteen (16) or seventeen (17) years old and charged with one of the crimes enumerated in Section 1104.2 of this title.

Appellant was sixteen years of age, and murder is among the crimes enumerated in Section 1104.2.

■ Appellant additionally asserts that evidence acquired through Dr. Jones' interview was taken in violation of his Sixth Amendment right to assistance of counsel. In *Buchanan v. Kentucky*, 483 U.S. 402, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the Supreme Court stated that the proper concern of the Sixth Amendment is consultation with counsel. To be an effective consultation, counsel must have been informed about the scope and nature of the proceeding. Effectiveness would also depend on counsel's awareness of the possible uses to which his client's statements in the proceeding could be put.

In this case, there can be no doubt that appellant consulted with counsel prior to initiating the reverse certification procedures. Counsel filed the motion for certification as a child. Counsel sought funds to conduct Dr. Jones' psychological examination. Counsel was fully aware of the dates on which the examination would be conducted, as well as its scope and nature. Due to appellant's decision to rely upon an insanity defense, counsel was on notice that he would have to anticipate the use of psychological evidence by the prosecution in rebuttal. *See Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). Under *Buchanan*, appellant was not deprived of his Sixth Amendment right to counsel.

### C.

■ Appellant additionally asserts that he was impermissibly restricted in his

cross-examination of Dr. Jones. Under the guise of determining the basis of Dr. Jones' opinion, defense counsel sought to cross-examine him with documents that had previously been excluded as inadmissible hearsay. While an expert may be required on cross-examination to disclose the facts or data supporting his opinion, 12 O.S.1981, § 2705, this did not provide appellant a license to parade a mass of inadmissible evidence before the jury. The trial court, concerned with the danger of misleading the jury and confusion of issues, *see* 12 O.S.1981, § 2403, determined that questions divulging the substance of the documents would not be allowed. We find no abuse of discretion. *See Hall v. State,* 698 P.2d 33, 36 (Okl.Cr.1985).

 Nor do we find a violation of appellant's right to confront witnesses against him. Although he was not able to disclose the contents of the documents, appellant was able to demonstrate Dr. Jones' lack of exposure to the writings in question. Appellant presented the testimony of his own expert who had considered those writings and emphasized their importance. The concerns raised under *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and *Alford v. United States,* 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931), are simply unfounded.

### III. FIRST STAGE JURY INSTRUCTIONS

#### A.

 Appellant objected to the trial court's instruction number four, which provided:

No person may be convicted of Murder in the First Degree unless his conduct caused the death of the person allegedly killed. A death is caused by conduct if the conduct is a substantial factor in bringing about the death and the conduct is dangerous and threatens or destroys life.

We find no error. Instructions to be given the jury are within the discretion of the trial court. His judgment will not be disturbed as long as the instructions, taken as a whole, fairly and accurately state the applicable law. *See Allison v. State,* 675 P.2d 142, 151 (Okl.Cr.1983). The jury was instructed that as an element of Murder in the First Degree, it must find that the death was caused by the defendant. The trial court did not abuse its discretion by defining causation.

#### B.

 Appellant also objected to the trial court's instruction on insanity. After instructing the jury that an insane person cannot be convicted of a crime and defining insanity under Oklahoma law, the trial court instructed the jury that:

where evidence is introduced, either by the State or by the defendant, which is sufficient to raise in the minds of the jury a reasonable doubt of the sanity of the defendant at the time of the act or acts for the commission of which he is being tried, the burden of proof is then on the State to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the acts or omissions that constitute the crime.

Appellant claims that this instruction imposed an impermissible burden of proof on him under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We disagree.

In *Mullaney,* the Supreme Court held that Maine law, which required a defendant to prove heat of passion by a preponderance of the evidence in order to reduce murder to manslaughter, violated due process as construed in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In *Winship,* due process was violated because the prosecution's burden of proof was reduced to a fair preponderance of the evidence. *Mullaney* held it impermissible to affirmatively shift the burden of proof to the defendant on an essential element of the crime. The instruction in the present case did neither. It squarely placed the burden of proof upon the State, and the reasonable doubt standard was applied. We find no error.

## C.

The trial court instructed the jury that it should determine whether Richard Howard was an accomplice in the convenience store killing, and that if he was, his testimony concerning that crime had to be corroborated. Appellant asserts that the record shows that Howard was an accomplice as a matter of law.

Under *Nunley v. State*, 601 P.2d 459, 462 (Okl.Cr.1979), the test used to determine whether a witness is an accomplice is whether he could be indicted for the offense for which the accused is being tried. However, if evidence is susceptible to alternative findings that the witness is or is not an accomplice, then the issue is a question of fact to be submitted to the jury under proper instruction. *Id.* In the present case, Richard Howard was originally charged, along with appellant, with First Degree Murder. That charge was later dismissed and a petition was filed in juvenile court charging Richard Howard with the delinquent act of accessory to a felony, to-wit, murder. Richard Howard, pled guilty to the charge and was given a five (5) year deferred sentence. In return for this agreement, Howard agreed to testify at trial concerning his knowledge of the three murders. The jury was made aware of this plea agreement. The trial court did not instruct the jury that Howard was an accomplice as a matter of law, but rather instructed the jury to determine whether he was an accomplice and that if so, his testimony must be corroborated in order to convict appellant.

Failure to give the proper instruction is harmless if sufficient corroborating evidence was presented at trial. *See Maxwell v. State*, 742 P.2d 1165, 1168 (Okl. Cr.1987). We find that the record in this case contains sufficient corroborating evidence. Evidence tending to connect appellant to the crime in this case consisted of appellant's confessions to other State's witnesses. Appellant had bragged to a coworker and other students in his high school that he had shot a man for refusing to sell him beer. Other portions of Howard's testimony were corroborated by physical evidence found at the scene. It is not necessary that an accomplice's testimony be corroborated in all material respects. *Johns v. State*, 742 P.2d 1142, 1146 (Okl.Cr. 1987). If the accomplice is corroborated as to one material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. *See Pierce v. State*, 651 P.2d 707, 709 (Okl.Cr.1982). Thus, if the trial court erred in its instruction, we find that the error was clearly harmless.

## D.

The trial court refused to give appellant's requested instructions on the defense of unconsciousness (automatism). This defense, recognized by statute at 21 O.S.1981, § 152(6), may be used in situations where the otherwise criminal conduct of an individual is the result of an involuntary act which is completely beyond the individual's knowledge and control. *Jones v. State*, 648 P.2d 1251, 1258 (Okl.Cr.1982).

Thus, a person who acts automatically does so without intent, exercise of free will, or knowledge of the act. *See Fulcher v. State*, 633 P.2d 142, 145 (Wyo. 1981). In support of this defense, appellant relied upon two brief references to his inability to remember killing his parents, and upon the expert testimony of Dr. Martin Krimsky, a psychologist. In essence, Dr. Krimsky opined that on the basis of tests, interviews, and writings and drawings made by appellant, appellant did not realize what he was doing if he shot and killed his parents.

While an accused is entitled to an instruction on his theory of defense, that right is dependent on there being sufficient evidence in the record to support that defense. *See Cherbonnier v. State*, 751 P.2d 1098, 1099 (Okl.Cr.1988). We find that the evidence in this case was not sufficient to require an instruction on the defense of automatism. Mere inability to remember an event, in and of itself, cannot establish automatism, since the relevant inquiry involves the accused's knowledge and

control at the time of the conduct, not at the time of trial. *See Foster v. State,* 657 P.2d 166, 171 (Okl.Cr.1983). Nor did Dr. Krimsky's additional testimony necessitate the instruction, since there was absolutely no evidence that appellant's conduct was beyond his control. Since the evidence at trial could not have supported the defense, the trial court committed no error by refusing to instruct.

### E.

■ Appellant requested the trial court to give the following instruction:

You are instructed that a homicide committed without a design to effect death by means of a dangerous weapon is Manslaughter in the First Degree.

This request was premised on appellant's defense of automatism, which we have determined was not established. Furthermore, the connection made by appellant between automatism and manslaughter demonstrates appellate counsel's fundamental misunderstanding of the character of the defense raised. Appellant reasons that if he was not conscious of his acts, he could not form the special mental element of malice aforethought, which is required for Murder in the First Degree. Without malice aforethought, appellant claims he should have been convicted of manslaughter.

The flaw in this reasoning lies in the fact that traditionally, automatism has been a defense not to the *mens rea* of a crime, but to the *actus reus*. The law imputes criminal liability only for voluntary unlawful action. No criminal liability is imputed for conduct which is involuntary, even in the commission of so called "strict liability" crimes. Examples of automatic conduct are blackouts and epileptic seizures. In such cases, a person is not held criminally liable because he is deemed not to have acted at all.

This construction is consistent with the opinions of this Court dealing with the automatism defense. For example, in *Carter v. State,* 376 P.2d 351 (Okl.Cr.1962), the defendant was charged with misdemeanor manslaughter on the theory that he had

been driving under the influence of alcohol, and his mother had been killed as a result. The defendant denied having been intoxicated, but was precluded from presenting evidence of his susceptibility to blackouts. This Court determined that the evidence was relevant to the defense of automatism and remanded the case for a new trial, since the issue of defendant's automatism could have negated voluntary action on his part and supplied a complete defense to his conduct during the period of his unconsciousness. The State was entitled to an instruction on the alternative theory of second degree manslaughter, though, since the defendant may have voluntarily taken control of a motor vehicle with knowledge of his susceptibility to blackouts, thereby engaging in culpable negligence. Thus, the defendant's criminal liability turned on whether he had committed a voluntary act.

In the present case, unconsciousness would have negated the homicidal act, not the element of malice aforethought. Therefore, even if automatism had been adequately raised, it would have provided no basis for an instruction on manslaughter. The trial court properly refused to give the instruction.

The jury's findings of guilt in Case Nos. CRF–86–1231 and CRF–86–1232 are AFFIRMED.

## IV. USE OF CAPITAL PROCEEDINGS

■ In his next proposition, appellant challenges the use of capital sentencing in cases involving defendants sixteen years of age at the time of the commission of the offense. He concedes that we have previously ruled against this argument in *Thompson v. State,* 724 P.2d 780 (Okl.Cr. 1986), *rev'd* 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702, and *Eddings v. State,* 616 P.2d 1159 (Okl.Cr.1980), *mod. on other grounds* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1, but urges us to reconsider our position in this case.

Although *Thompson* was reversed by the Supreme Court, the plurality of the Court limited itself to the holding that the Eight and Fourteenth Amendments prohib-

it execution of a person who was *under* sixteen years of age at the time of his or her offense. In this case, appellant was not under the age of sixteen.

We are unpersuaded that our previous decisions should be disturbed with respect to a person who was sixteen at the time of his offense. In her concurring opinion, Justice O'Connor expressed the belief that a national consensus exists which forbids the execution of any person for crimes committed before the age of sixteen. In the absence of a clear expression by the State Legislature that younger persons could be executed, she found the use of capital punishment to be unauthorized. By excluding persons sixteen years of age who commit murder from the statutory definition on "child", *see* 10 O.S.Supp.1987, § 1101(1), we find that the Legislature clearly expressed its intention that such persons should be subject to the full range of punishments prescribed for adult offenders. Accordingly, we reject appellant's proposition.

## V. SECOND STAGE EVIDENCE

### A.

■■■ Claiming that juries in Oklahoma County operate under the mistaken belief that a person sentenced to imprisonment for life will be paroled after only a few years of incarceration, appellant sought to introduce testimony concerning pardon and parole practices in Oklahoma. He seeks reduction of his sentences to life imprisonment because the trial court prevented the jury's consideration of that evidence by excluding it. We must dismiss the argument as being patently frivolous. The law in Oklahoma is well settled that practices of the Pardon and Parole Board are not proper matters for submission to the jury. *See Miller v. State*, 751 P.2d 733 (Okl.Cr.1988); *Wright v. State*, 617 P.2d 1354 (Okl.Cr.1979). No error occurred.

### B.

■■■ Appellant additionally asserts that exclusion of documents, testimony concerning evolving standards of decency, and evidence of Pardon and Parole Board practices deprived him of his right to present evidence in mitigation of punishment. The constitutional goal of presenting aggravating and mitigating evidence to a jury in a capitol case is to permit the sentencer to focus "on the characteristics of the person who committed the crime." *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). None of the cases on which appellant relies have extended mandatory consideration of mitigating evidence to circumstances beyond the realm of the defendant's character or record and the circumstances of the offense itself. *See, e.g., Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).[1] Nor does the law of this State require such an extension. As appellant candidly admits in his brief, neither pardon and parole practices nor evolving standards of decency have anything to do with appellant's character or record or with the circumstances of the offenses involved in this case. Those matters were not relevant evidence in mitigation of punishment and were properly excluded by the trial court.

■■■ The documents excluded had been ruled inadmissible during the guilt stage because they were hearsay. Appellant does not claim that the documents were admissible under the evidence code, but urges us to find error because "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Green v. Georgia*, 442 U.S. 95, 97, 99 S.Ct. 2150, 2151–52, 60 L.Ed.2d 738 (1979). In *Green*, the defendant was being sentenced for his

---

1. In *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), the Supreme Court determined that no violation of the Constitution occurred where a California statute required the trial court to instruct the jury that a sentence "without possibility of parole" could be commuted by the governor. However, nowhere did the Court intimate that such an instruction was constitutionally required, nor that such information must be presented to the sentencer for consideration in mitigation or aggravation of the offense.

role in the abduction, rape, and murder of a store clerk. The trial court had prevented the defendant from introducing a statement made by his accomplice that he, not the defendant, had committed the murder. That evidence was essential to reduce the defendant's apparent role in the homicide.

No such necessity existed in this case. Appellant wanted to use the documents to show his personality and his involvement in satan worship. He was permitted to make those showings by introducing other competent evidence in court, and we find no error.

## VI. PROSECUTORIAL ARGUMENTS: SECOND STAGE

### A.

■ During closing argument, the prosecutor asked the jury to consider whether, as of the time of the first homicide, there was a probability that appellant would commit additional acts of violence constituting a continuing threat to society. Appellant objected twice, claiming that the continuing threat circumstance should begin on the date of sentencing, not the date of the offense. Both objections were overruled by the trial court. Nonetheless, the prosecutor changed his argument and asked the jury to determine whether the probability of future acts existed at the time of trial.

No authority was provided to this Court to establish the point in time from which a person may present a "continuing threat to society" for purposes of 21 O.S.1981, § 701.12(7). It is clear, however, that when the State obtains a conviction for the commission of a violent crime, it has evidence that the defendant was a threat at the time of the offense. Proof of additional crimes committed prior to trial are relevant to show a continuing threat. *See VanWoundenberg v. State*, 720 P.2d 328, 337 (Okl.Cr.1986), *cert. denied* 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986). Nonetheless, the circumstance cannot be established unless the evidence at trial supports a finding that the defendant will *continue* to present a threat to society prospectively, i.e., *after* sentencing. To the

extent that the prosecutor's argument in this case implied that no threat had to exist after sentencing, it was improper. However, as in *Griffith v. State*, 734 P.2d 303, 307 (Okl.Cr.1987), "[W]e believe his subsequent explanation, together with the trial court's instructions, eliminated any potential for prejudice."

### B.

Appellant also asserts that the prosecutor sought to minimize the jury's sense of responsibility for determining the appropriateness of a death sentence. In support, he relies upon *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In that case, the prosecutor responded to defense counsel's argument that the jury would be killing the defendant if it returned a death sentence by informing them that their decision would be reviewed on appeal. No such problem was presented in this case.

The danger of the argument made in *Caldwell* was that it told the jury that it was not the final arbiter of the defendant's fate. It left the jury with the impression that regardless of its decision, some other authority would determine what punishment was appropriate. The record in this case contains no similar argument, and we find no error.

## VII. SECOND STAGE JURY INSTRUCTIONS

### A.

■ In the first stage of trial, the jury was instructed that "[y]ou should not let sympathy, sentiment, or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully under your oaths and return such verdict as the evidence warrants when measured by these instructions." In the second stage, the jury was instructed that "[a]ll the previous instructions given you in the first part of this trial apply where appropriate and must be considered together with these additional instructions." Relying on *Parks v. Brown*, 860 F.2d 1545 (10th Cir.1988), ap-

pellant asserts that these instructions, when read together, prevented the jury from considering sympathy as a mitigating factor. However, for the reasons stated in *Fox v. State*, 779 P.2d 562, 574 (Okl.Cr. 1989), we reject this assignment of error. *See also, Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

### B.

The jury was instructed to determine the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Appellant claims that this aggravating circumstance, codified at 21 O.S.1981, § 701.12(7), is unconstitutionally vague because no standards have been imposed for its application. We have repeatedly held that this circumstance is specific, not vague, and is readily understandable. Also, it is not being evaluated in an arbitrary manner. *See VanWoundenberg v. State*, 720 P.2d at 336–37, and authorities cited therein. The opinions of this Court, contrary to language in appellant's brief, have not "rubber-stamped" juries' findings of this circumstance, but have found the circumstance justified under the facts of the cases presented. The constitutional challenge must fail.

Furthermore, the evidence presented at trial amply supported the jury's finding of this circumstance. Prior to killing the convenience store clerk, appellant showed Howard the gun he was carrying and told him, "I want to see what it feels like to kill somebody." So he did. In the following months, appellant bragged of his conduct to friends and co-workers. Then, six months after the first homicide, he shot and killed his own parents. He took precautions to make sure that his parents were dead and to make sure no one had heard the shots. He committed the murders in his under shorts so that no blood could spatter on his clothes. He intended to use Howard as an alibi and conceived an elaborate plan to "discover" his parents dead in bed. The repeated incidences of violence and the calloused manner of appellant's actions in this case support finding this aggravating circumstance in all three homicides. *See Robison v. State*, 677 P.2d 1080 (Okl.Cr.1983).

### C.

In the bill of particulars, the State sought to prove that the murders were especially heinous, atrocious, or cruel. 21 O.S.1981, § 701.12(4). Appellant asserts that the trial court failed to properly instruct the jury on the application of this aggravating circumstance. We agree. In *Stouffer v. State*, 742 P.2d 562 (Okl.Cr. 1987) *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988), this Court determined that this circumstance cannot be supported absent proof of torture or serious physical abuse to the victim prior to death. In this case, the trial court refused to give an instruction requiring such findings. Furthermore, as the State concedes, the evidence produced at trial did not support the circumstance under the narrowed interpretation adopted by this Court. Accordingly, the jury's finding of this circumstance must fail.

### D.

The jury was instructed:

If you unanimously find that one or more of the aggravating circumstances existed beyond a reasonable doubt, the death penalty shall not be imposed unless you also unanimously find that any such aggravating circumstance or circumstances outweigh the finding of one or more mitigating circumstances.

Appellant asserts that this instruction created a mandatory death sentence in violation of his right to due process. *See Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). A plain reading of the instruction supports no such interpretation. It creates an absolute prohibition to imposition of the death sentence under some circumstances, but imposes no mandatory obligation whatsoever to return a sentence of death. In additional instructions, the jury was informed that it "would be *authorized to consider* imposing a sentence of death" if it found the existence of

one or more aggravating circumstances. (Emphasis added) The instructions given provided the jury with fair and accurate statements of the law, and the trial court acted within its discretion. *See Allison v. State, supra.* We find no error.

### E.

■ Appellant also challenges the preceding instruction on the grounds that it fails to instruct the jury that the aggravating circumstances must outweigh the mitigating circumstances "beyond a reasonable doubt." Appellant has provided no authority to show that such an instruction is required under statute or the Constitution. The case of *In re Winship, supra,* stands for the proposition that the State must prove guilt beyond a reasonable doubt. The balancing considerations of a jury in a capital sentencing proceeding involve value judgments of moral culpability, not concrete determinations of facts which establish guilt. As such, the holding of *Winship* does not apply. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), also cited by appellant, involves the application of the double jeopardy clause to capital sentencing proceedings. It provides no guidance on the issue raised here.

This Court has previously held that specific standards for the balancing of the aggravating and mitigating circumstances are not required. *Brogie v. State,* 695 P.2d 538, 544 (Okl.Cr.1985). *See also Zant v. Stephens,* 462 U.S. 862, 890, 103 S.Ct. 2733, 2749, 77 L.Ed.2d 235 (1983). This assignment must fail.

### F.

■ Finally, appellant asserts that the trial court erred by failing to inform the jury that the court would impose a sentence of life imprisonment if a unanimous decision on punishment could not be reached in a reasonable time. We continue to follow our previous decisions that such an instruction is unnecessary. *See Hale v. State,* 750 P.2d 130, 140 (Okl.Cr.1988).

### VIII. SENTENCE REVIEW

■ Pursuant to 21 O.S.Supp.1987, § 701.13(C), this Court must conduct a mandatory sentence review. As noted above, we have stricken the aggravating circumstance of heinous, atrocious, or cruel due to insufficient instructions and evidence. In *Stouffer v. State,* 742 P.2d 562, 564 (Okl.Cr.1987), this Court held that an independent reweighing of aggravating and mitigating circumstances is implicit to our statutory duty to determine the factual substantiation of the verdict and the validity of the death sentence. *See also Castro v. State,* 749 P.2d 1146 (Okl.Cr.1988).

We have already found the evidence sufficient to support the jury's finding of the aggravating circumstance that the appellant would constitute a continuing threat to society. The jury also found that appellant knowingly created a great risk of death to more than one person when he killed his parents. That fact of contemporaneous multiple killings of people in the same room amply supports the jury's determination. *See Brecheen v. State,* 732 P.2d 889, 898 (Okl.Cr.1987).

In *Clemons v. Mississippi,* 494 U.S. ——, ——, 110 S.Ct. 1441, 1449, 108 L.Ed.2d 725, 739 (1990), the United States Supreme Court found nothing in appellate weighing or reweighing of the aggravating and mitigating circumstances that is at odds with contemporary standards of fairness or that is inherently unreliable and likely to result in arbitrary imposition of the death sentence. The Court further stated that appellate courts are not hindered in performing this function without written jury findings concerning mitigating circumstances. *Id.*

In the present case, appellant presented evidence in mitigation which consisted of his age, his record of being a good student in school, his record of being a good worker on his job, the love and support of his family and friends, the absence of any prior criminal record, his mental capacity to appreciate the wrongfulness of his conduct and his prospects for rehabilitation. After discarding the evidence supporting the invalid aggravating circumstance of "especially heinous, atrocious or cruel," and af-

ter carefully weighing the remaining aggravating circumstances against the mitigating evidence presented at trial, we find the sentence of death to be factually substantiated and appropriate.

Finding no error warranting modification, the judgments and sentences of the District Court of Oklahoma County are AFFIRMED.

LUMPKIN, V.P.J., and PARKS, J., concur.

LANE, P.J., and BRETT, J., specially concur.

LANE, Presiding Judge, specially concurring:

I agree with the majority that the conviction of the appellant should be affirmed, and that the aggravating circumstance of the murders being heinous, atrocious or cruel cannot be sustained under the evidence presented in the trial of this case. I write at this time to express my views about the alternatives available to us when we find one of the aggravating circumstances must fail. Under 21 O.S.Supp. 1985, § 701.13(E), there are three alternatives available to this Court when we find that an aggravating circumstance cannot be sustained. We may affirm the death penalty, as we have done here; remand for a new sentencing proceeding under the provisions of 21 O.S.Supp.1989, § 701.10(A); or reduce the punishment to one of the forms of a life sentence.

I find three cases in which this Court has opted for the first alternative: *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987); *Castro* and *Nguyen v. State*, 769 P.2d 167 (Okl.Cr. 1988). In each of these cases we found that the evidence would not sustain an aggravating circumstance; but in light of the overwhelming evidence of the guilt of the appellant and the evidence of other aggravating circumstances validly found by the jury, we determined that the improper finding of the invalid circumstance to be harmless error.

In *Stouffer*, 742 P.2d at 564, we stated:

Upon careful consideration of the evidence supporting the aggravating circumstances, and the evidence of circumstances which may in fairness and mercy be considered as extenuating or reducing the degree of moral culpability, we find the sentence of death factually substantiated and appropriate. Due to the overwhelming evidence of guilt and the jury's rejection of Stouffer's defense of self-defense and accident, the jury's finding that the murder was heinous, atrocious, or cruel was at most harmless error. Nor can we say that the sentence of death is arbitrary or capricious after the inappropriately determined aggravating sentence is removed from consideration and the aggravating and mitigating circumstances are reweighed.

(Citations and footnotes omitted).

Therefore, when we find an aggravating circumstance to be unsupported by the evidence we must determine if any valid aggravating circumstances remain. The court will then reweigh those remaining valid circumstances against the mitigating evidence. If we find that there is no question that the aggravating circumstances outweigh the mitigating evidence, the death sentence may be affirmed. However, if we find it questionable that the aggravating circumstances do not outweigh the mitigating evidence, then the death sentence is by definition arbitrary or capricious and must be vacated, reducing the sentence to a form of life imprisonment.

A gray area exists between these two poles of our alternatives. There will be factual situations presented to us where we will not be able to determine beyond question whether or not a death sentence would be appropriate or not appropriate absent the improper finding of an aggravating circumstance. In this situation, we must remand the matter to the trial court for a new sentencing trial.

When these alternatives are considered in the present case, our conclusion is easily reconciled. The jury found that in all three murders there was an additional aggravating circumstance of continuing threat, and in the Bellafato murders they also found that Appellant created a risk of death to

more than one person. Judge Johnson finds that these additional aggravating circumstances are factually supported, and I agree, finding that the evidence is overwhelming. In addition, we are required to consider if the death penalty is appropriate by comparing the evidence of aggravation and mitigation. I find Appellant's involvement in Satanism, the manner and motive of the crimes and his failure to exhibit remorse until after his incarceration to be strong evidence of the remaining aggravating circumstances found by the jury. The strongest mitigating evidence is the Appellant's age, his public behavior and reputation and the fact that he was emotionally disturbed. When one side is considered in light of the other, I find that the jury properly found in favor of the death penalty even when the one circumstance is eliminated.

There is precedent for this position. In *Castro* the appellant was convicted of a murder that occurred during the commission of an armed robbery. We upheld the death penalty on the single aggravating circumstance of continuing threat when evidence concerning punishment indicated that the appellant had killed before and had also committed prior robberies. The fact that in our present case there were multiple murders, separated by time and without a common motive, is very strong aggravating evidence. In addition, the jury found that Appellant created a great risk of death to more than one person in the Bellafatto murders.

For the above reasons I CONCUR in the majority opinion in affirming Appellant's conviction for Murder in the First Degree and the imposition of the death penalty.

BRETT, Judge, specially concurring:

I agree that this case must be affirmed even though the "especially heinous, atrocious, or cruel" aggravating circumstance must fail because of insufficient evidence. However, I feel that it is imperative to discuss the facts of this case and why the evidence does not support this aggravating circumstance. The jury was improperly instructed on the aggravating circumstance

and that facts do not support it. There was no evidence that the murders involved "torture or serious physical abuse" as required by *Stouffer v. State*, 742 P.2d 562 (Okl.Cr.1987), *cert. denied* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). The Circle K attendant was fatally shot in the head. Although the medical examiner testified that he probably did not die until about ten minutes later, there was no evidence that he was conscious after the fatal shot or that the suffered from serious physical abuse or torture. *See Odum v. State*, 651 P.2d 703 (Okl.Cr.1982). The appellant's parents were shot in the back of their heads while they were asleep in bed and both died instantly. The State conceded in its brief that Mr. Bellofatto's death did not involve serious physical abuse or torture. Also, in the trial judge's report, he stated that the victims in each case were not physically harmed or tortured prior to death.