F I L E D
United States Court of Appeals
Tenth Circuit

JUL 8 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JAMES GLENN ROBEDEAUX,

Petitioner - Appellant,

v.

GARY E. GIBSON, Warden,

Respondent - Appellee.

No. 98-6021
(D. Ct. No. 96-CV-731)
(W.D. Okla.)

ORDER AND JUDGMENT[*]

Before **TACHA**, **EBEL**, and **BRISCOE**, Circuit Judges.

In 1985, petitioner James Glenn Robedeaux was convicted of first degree murder in Oklahoma County District Court for the death of Nancy McKinney. The jury imposed a capital sentence. On direct appeal, the Oklahoma Court of Criminal Appeals affirmed petitioner's conviction and death sentence, see Robedeaux v. State, 866 P.2d 417 (Okla. Crim. App. 1993), and the Supreme Court denied certiorari, see Robedeaux v. Oklahoma, 513 U.S. 833 (1994). Petitioner sought state post-conviction relief in the trial court. That relief was

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

denied by both the trial court and the Oklahoma Court of Criminal Appeals. <u>See</u> <u>Robedeaux v. State</u>, 908 P.2d 804 (Okla. Crim. App. 1995). On February 21, 1997, Robedeaux filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Oklahoma, alleging ten grounds for relief. The district court denied the petition on December 8, 1997. Robedeaux filed this timely appeal, raising seven of the issues presented to the district court. We granted a certificate of appealability for all seven issues and now affirm.

### Background

Robedeaux and Nancy McKinney shared an apartment in September of 1985 when McKinney disappeared, never to be heard from again. Parts of Nancy McKinney's body -- a leg, part of her skull, and a piece of her arm and hand -- were found several months later scattered over three counties in central Oklahoma. Authorities could not ascertain the cause of death from the recovered body parts. Significant circumstantial evidence linked Robedeaux to the victim's death and dismemberment, but the state had little direct evidence showing Robedeaux committed first degree murder. Oklahoma law allows a conviction based on circumstantial evidence.

In the first phase of the trial, the jury found Robedeaux guilty of first

degree murder.[1]  After hearing additional testimony, the jury found aggravating factors outweighed mitigating factors and imposed a death sentence.  Specifically, the jury concluded that Robedeaux was a continuing threat to society, that he had committed a prior violent felony, and that the murder was "especially heinous and atrocious."  The Oklahoma Court of Criminal Appeals dismissed the "especially heinous and atrocious" aggravating circumstance due to lack of evidence, but it affirmed the conviction and the weighing of the aggravating and mitigating factors.

In this habeas petition, Robedeaux asserts the following grounds for relief: (1) insufficient evidence existed to prove that he actually killed the victim and that he acted with malice aforethought; (2) the trial court's refusal to instruct on a lesser included offense violated due process under Beck v. Alabama, 447 U.S. 625 (1980); (3) the trial court improperly excused a venireperson for cause because her statement that she would be unable to impose the death penalty was ambiguous; (4) admission of Robedeaux's prior unadjudicated crimes in the sentencing phase violated the Eighth Amendment; (5) the state's continuing threat aggravating circumstance is unconstitutional; (6) trial counsel was

---

[1]Okla. Stat. Ann. tit. 21, § 701.7(A) states: "A person commits murder in the first degree when he unlawfully and with malice aforethought causes the death of another human being.  Malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof."  Intent to commit murder "may be formed instantly before committing the act."  Id. § 703.

constitutionally defective at the sentencing stage by failing to develop mitigating evidence as to Robedeaux's organic brain injury; and (7) cumulative error.

We review the district court's legal conclusions de novo and its factual findings for clear error. See, e.g., Newsted v. Gibson, 158 F.3d 1085, 1089 (10th Cir.), cert. denied, 119 S. Ct. 1509 (1999). Any district court findings based merely on a review of the state record, however, are not entitled to the clearly erroneous standard. See Cunningham v. Diesslin, 92 F.3d 1054, 1062 n.6 (10th Cir. 1996). Because Robedeaux filed his habeas petition after April 24, 1996, we apply 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). See Rogers v. Gibson,__F.3d__, No. 98-6301, 1999 WL 203188, at *1 n.1 (10th Cir. Apr. 12, 1999). Under § 2254(d), a federal court may not grant habeas on any claim denied on the merits by the state court, unless the state proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2).[2] Additionally, we presume the factual

---

[2]The federal courts of appeals have adopted differing interpretations of the standards of deference under § 2254(d)(1). See, e.g., Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 885-887 (3d Cir. 1999) (citing cases); Nevers v. Killinger, 169

findings of the state court are correct unless petitioner shows otherwise by clear and convincing evidence.  See id. § 2254(e)(1).

# I.

Petitioner strenuously argues that the state offered insufficient evidence to establish that he killed McKinney or to establish that he acted with malice aforethought.  Under petitioner's theory, the state provided nothing but tenuous circumstantial evidence that he committed the murder, and this minimal evidence requires an unconstitutionally large inferential leap in order to establish guilt.  Similarly, petitioner asserts that given the paucity of evidence regarding his state of mind, his conviction for first degree murder cannot stand.

In reviewing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "To

---

F.3d 352, 357-62 (6th Cir. 1999) (citing cases), petition for cert. filed, 67 U.S.L.W. 3654 (U.S. Apr. 5, 1999) (No. 98-1665); O'Brien v. Dubois, 145 F.3d 16, 21-25 (1st Cir. 1998); Green v. French, 143 F.3d 865, 870-73 (4th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999).  The Supreme Court has granted certiorari to settle the differences in interpretation.  See Williams v. Taylor, 119 S. Ct. 1355 (1999).  Despite the varied interpretations, "[t]he disagreement is not about whether the AEDPA requires a high degree of deference to the state court's judgment; rather, it is about how to gauge the degree of deference necessary."  Nevers, 169 F.3d at 361.  Under any of the deferential standards announced by the circuits, this appeal would reach the same result.  Therefore, we decline to adopt a specific interpretation of § 2254(d)(1) in this case.

be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir. 1995) (internal quotation marks and citations omitted). After carefully reviewing the record in this case, we find the evidence sufficient to sustain petitioner's conviction.

Instead of recounting the full extent of the evidence, which the state court has already done, see Robedeaux v. State, 866 P.2d 417, 426-29 (Okla. Crim. App. 1993), we merely highlight the most salient facts in our analysis. Petitioner shared a one-bedroom apartment with Nancy McKinney in August and September of 1985. On the morning of September 22, Barbara Jones, who lived immediately below Robedeaux and McKinney, saw McKinney take trash to the dumpster. That night, Mrs. Jones and her husband both heard loud thumping, such as might be caused by someone jumping off furniture, coming from Robedeaux's apartment. The noise, which was loud enough to shake the Jones' apartment, began around 10:00 p.m. and continued intermittently until approximately 1:00 a.m. Mrs. Jones, who testified that she could tell the difference between Robedeaux's heavy footsteps above her apartment and McKinney's softer ones, heard heavier footsteps periodically during this time but did not hear McKinney's. Earlier in the evening, she had heard both heavy and soft footsteps above her. After September 22, she heard no more soft footsteps.

Nobody saw the decedent after September 22, 1985. Mrs. Jones saw Robedeaux leave the apartment the next morning driving McKinney's car. Five days later, on September 28, 1985, Mrs. Jones heard the sounds of a carpet cleaner or vacuum upstairs for approximately two hours. After that, she saw Robedeaux putting a carpet cleaner in his truck. Additional evidence revealed that Robedeaux had a female acquaintance rent the carpet cleaner for him.

Shortly after September 23, 1985, the maintenance man for Robedeaux's apartment, Allen Savill, noticed brownish-red stains on the carpet at the entrance of Robedeaux's bedroom closet and on the closet walls. The owner of the apartment, Arthur Smedley, also saw the stains. Savill noticed towels with similar stains hanging in the bathroom. He collected the towels when he saw Robedeaux throw them in the apartment complex dumpster. Tests revealed that the stains on the carpet, wall, and towels were Type A blood, Nancy McKinney's type. Type A blood was also found on a pair of Robedeaux's pants and in his truck. Robedeaux has Type O blood. Further tests showed a high concentration of blood on the carpet in Robedeaux's bedroom, much of which had been spread and diluted through cleaning. When police pulled up the carpet, they found blood stains on the pad and floor underneath. Petitioner told police that he had fought with the decedent in early September and hit her hard enough to make her bleed on the floor. A police expert testified that only a great deal of blood could have

soaked through a carpet. An amount such as would come from a cut or a bloody nose would not be sufficient to soak through.

Numerous witnesses testified that they smelled a putrid odor in the apartment after the end of September. This odor, which the petitioner told several people was "spoiled meat," was present in the apartment for weeks. A police expert testified that blood, unless refrigerated, has a very foul odor.

Robedeaux's own statements, introduced at trial through witness testimony, provided additional incriminating evidence. Lisa Austin, who met Robedeaux on October 18, 1985 and lived with him for about a month, testified that on November 13, 1985, Robedeaux told her that he had killed Nancy McKinney and "cut her up." Additionally, when police first questioned him, Robedeaux denied any bloodshed or violence in his apartment. Instead, he claimed he had spilled "red koolaid" on the floor, causing a stain. He later admitted to police that he had hit the decedent on several occasions during fights which were usually alcohol-related. He professed to have been angry at McKinney for writing bad checks, and he told officers that he hit her repeatedly during their last fight, causing her to bleed in his bedroom. He claimed McKinney left him in early September, not long after this last fight.

While McKinney was never seen again, authorities later recovered several human body parts -- a leg and foot, an arm and hand, and a piece of a skull -- in

the same general vicinity in central Oklahoma. Dr. Larry Balding, a forensic pathologist and anthropologist, compared the skull to x-rays of the decedent and concluded the skull belonged to her. He also found the leg bone consistent with the decedent's x-rays, the foot consistent with the decedent's foot size, and the blood to be Type A, the decedent's blood type. Dr. Balding opined that the leg belonged to the decedent. He further found the arm had strong consistencies and no inconsistencies with the decedent's characteristics. Finally, he noted evidence of dismemberment. Another expert, anthropologist Dr. Clyde Snow, concurred in Dr. Balding's conclusions with respect to the skull and the leg. He also testified regarding evidence of saw marks on the recovered leg.

We hold that the record shows a rational trier could have found the elements of first degree murder against petitioner beyond a reasonable doubt. Nancy McKinney's disappearance, the loud noises in Robedeaux's apartment, the large amount of blood in the apartment, the blood on petitioner's clothes and truck, petitioner's prior history of violence toward the decedent, Robedeaux's admission to Lisa Austin that he killed and dismembered the decedent, Robedeaux's inconsistent story to the police, and the identification of parts of the decedent's body combine to support a conclusion that Robedeaux killed and dismembered Nancy McKinney. In addition, Robedeaux's history of violence toward the decedent, his admission that he had been angry with her for writing

bad checks, and his effort to hide the crime by giving the police inconsistent stories and dismembering the body all support a reasonable inference that Robedeaux acted with malice aforethought. A jury can find intent, including malice aforethought, from circumstantial evidence. See Holland v. United States, 348 U.S. 121, 140 (1954); Barr v. State, 763 P.2d 1184, 1186 (Okla. Crim. App. 1988). Malice requires only proof that petitioner, at the time he committed the act, had a specific and deliberate intent to take away McKinney's life. This malicious intent may be formed in an instant: "A design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into execution." Okla. Stat. Ann. tit. 21, § 703; see also Paxton v. State, 867 P.2d 1309, 1316 (Okla. Crim. App. 1993). While petitioner's counsel aggressively challenged the credibility of much of this evidence, we conclude that a reasonable factfinder could have found it sufficiently credible to convict petitioner. Therefore, the state court decision on this matter was not contrary to, and did not involve an unreasonable application of, established federal law, see 28 U.S.C. § 2254(d)(1), nor was it "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2).

## II.

At trial, petitioner requested jury instructions on second degree murder and

first degree manslaughter. The trial court refused to give such instructions, instructing the jury only on first degree murder. Petitioner claims that the failure to instruct on these offenses violates his due process rights under Beck v. Alabama, 447 U.S. 625 (1980). In Beck, the Supreme Court held that, in a capital case, due process requires the court to give a lesser included offense instruction if the evidence would support a conviction on that offense. See id. at 638; see also Hopper v. Evans, 456 U.S. 605, 610 (1982); Duvall v. Reynolds, 139 F.3d 768, 786 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998). The Supreme Court has emphasized that the Beck rule applies "only on those offenses that have been deemed [by the state] to constitute lesser included offenses of the charged crime." Hopkins v. Reeves, 524 U.S. 88, 118 S. Ct. 1895, 1901 (1998).[3]

**A.**

---

[3]We note that there is some ambiguity about the scope of Beck in this circuit. Compare United States v. McVeigh, 153 F.3d 1166, 1197 (10th Cir. 1998) (finding, as alternative holding, that lesser included offense need not be given when jury had sentencing discretion, thereby limiting Beck to instances in which conviction of first degree murder automatically would result in death sentence), cert. denied, 119 S. Ct. 1148 (1999), Johnson v. Gibson, 169 F.3d 1239, 1251 (10th Cir. 1999) (following analysis from McVeigh in state habeas appeal), and Roberts v. Ward, No. 98-6066, 1999 WL 162751, at *8 (10th Cir. Mar. 25 1999) (unpublished) (following McVeigh analysis), with Stouffer v. Reynolds, 168 F.3d 1155, 1170-71 (10th Cir. 1999) (applying traditional Beck analysis), and Walker v. Attorney Gen. for State of Okla., 167 F.3d 1339, 1349 (10th Cir. 1999) (ignoring McVeigh and applying traditional Beck analysis). In Hopkins v. Reeves, the Supreme Court specifically declined to rule on this issue. See 118 S. Ct. at 1902 n.7. We need not resolve this ambiguity in this case because, even under the traditional Beck framework, we find petitioner cannot meet his burden under 28 U.S.C. § 2254(d).

On direct appeal, the Oklahoma Court of Criminal Appeals held that petitioner deserved no lesser included offense instruction. It stated:

> This court has repeatedly held that an instruction on a lesser included offense or a theory of defense need only be given when there is evidence in the record to support such an instruction. . . .
>
> Here, the evidence warranted only instructions on first degree malice aforethought murder and Appellant's defense of alibi. To instruct on any lesser included offenses to malice aforethought murder or more than one theory of defense would be inconsistent. While appellant is entitled to an instruction on his theory of defense, he is not entitled to instructions on every possible theory of defense. See Kinsey v. State, 798 P.2d 630, 633 (Okla. Cr. 1990). As the evidence in the present case showed that Appellant either killed the decedent with malice aforethought or was not present at the time of her death, the trial court properly refused Appellant's requested instructions.

Robedeaux v. State, 866 P.2d 417, 431 (Okla. Crim. App. 1993). In denying Robedeaux's habeas corpus petition, the district court affirmed the Court of Criminal Appeals' finding that there was insufficient evidence to support a lesser included offense instruction. See Dist. Ct. Mem. Op. at 22-23.

As an initial matter, we interpret the Oklahoma Court of Criminal Appeals' opinion as finding insufficient evidence to warrant a lesser included offense instruction. Petitioner points out that the opinion also may rely upon the fact that Robedeaux argued a defense theory -- alibi and innocence -- inconsistent with the requested instructions on second degree murder and first degree manslaughter. The Supreme Court requires courts to look at all evidence in the record to

determine whether a lesser included offense instruction should have been given.

See Hopper, 456 U.S. at 611 ("Beck held that due process requires that a lesser included offense instruction be given *when the evidence warrants such an instruction*." (emphasis added)). Although an inconsistent trial theory may indicate a lack of evidence for a Beck instruction, it does not definitively establish that fact. See Parks v. Brown, 840 F.2d 1496, 1500-01 (10th Cir. 1987) (considering all evidence, including inconsistent alibi defense, in determining whether Beck violation occurred), vacated on other grounds on reh'g en banc, 860 F.2d 1545 (10th Cir. 1988), rev'd sub nom. Saffle v. Parks, 494 U.S. 484 (1990); id. at 1521-22 (Baldock, J., on petition for rehearing); Walker v. Jones, 10 F.3d 1569, 1573-74 (11th Cir. 1994) (holding evidence supported only an instruction for capital murder, especially in light of defendant's alibi and intoxication defenses).[4] The district court and the Oklahoma Court of Criminal Appeals both

---

[4]In fact, the Supreme Court, in Schad v. Arizona, 501 U.S. 624, 645-48 (1991), implicitly affirmed the idea that a lesser included instruction that is supported by the evidence can satisfy Beck, even if it is inconsistent with the defendant's theory of the case. In Schad, the defendant was convicted of capital murder, and the court gave a lesser included instruction on second degree murder. The second degree murder instruction was inconsistent with defendant's trial theory, which was that he had robbed the victim but had not killed him. Defendant requested a lesser included instruction on robbery, which the trial court refused. The Supreme Court found no Beck violation because the jury had a third option to capital murder and that option was supported by evidence in the record. See id. at 647-48. The fact that defendant had argued "I did not kill him" was not enough to mandate only instructions consistent with his theory of the case.

explicitly determined that the evidence did not support giving petitioner's requested instructions. See Dist. Ct. Mem. Op. at 22-23; Robedeaux, 866 P.2d at 431. Therefore, we refuse petitioner's entreaty to construe the state court's decision as relying solely on the inconsistent alibi defense and completely failing to review the evidence in this case.

On this record, the state court correctly refused to instruct on first degree manslaughter. In Oklahoma, first degree manslaughter occurs, inter alia, "[w]hen perpetrated without a design to effect death, and in a heat of passion, but in a cruel and unusual manner." Okla. Stat. Ann. tit. 21, § 711(2). Heat of passion has the following elements: "'(1) adequate provocation; (2) a passion or emotion such as fear, terror, anger, rage or resentment; (3) homicide occurred while the passion still existed and before a reasonable opportunity for the passion to cool; and (4) a causal connection between the provocation, passion and homicide.'" Lewis v. State, 970 P.2d 1158, 1166 (Okla. Crim. App. 1998) (quoting Charm v. State, 924 P.2d 754, 760 (Okla. Crim. App. 1996)); accord Le v. State, 947 P.2d 535, 546 (Okla. Crim. App. 1997), cert. denied sub nom. Thanh Le v. Oklahoma, 118 S. Ct. 2329 (1998). The passion must be "so great as to render the mind incapable of forming a design to effect death." See Charm, 924 P.2d at 760 (internal quotation marks and citation omitted). Petitioner can point to no evidence in the record that he acted in the heat of passion. Additionally,

- 14 -

petitioner has not shown that he was adequately provoked. Robedeaux relies on his statements to interrogating police officers that he had been mad at the decedent for writing bad checks. However, anger for passing bad checks does not provide the kind of provocation necessary for manslaughter. Cf., e.g., Conover v. State, 933 P.2d 904, 917 (Okla. Crim. App. 1997) (breaking window of acquaintance's home was not sufficient provocation). Moreover, the murder occurred weeks after petitioner's claimed anger at McKinney. Petitioner stated that his final fight with the decedent occurred in early September and that the decedent left him after that time. The evidence presented at Robedeaux's trial establishes that McKinney was killed on September 22. A heat of passion offense must occur before the murderer has a reasonable opportunity to cool down. See Lewis, 970 P.2d at 1166. Thus, even if petitioner had been adequately provoked in early September, he cannot reasonably claim his passion had not cooled by the time he killed McKinney. See, e.g., id. (finding defendant had reasonable opportunity to cool down between learning of victim's infidelity to him and murder of victim).

The argument on second degree murder is a closer one than manslaughter, but it yields the same outcome. Second degree murder in Oklahoma occurs, inter alia, "[w]hen perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any

premeditated design to effect the death of any particular individual." Okla. Stat. Ann. tit. 21, § 701.8(1). Petitioner's theory is that his testimony showed he and the decedent had fought on several occasions in the past and the murder could have resulted unintentionally from such an incident. Petitioner relies heavily on the testimony of Deputy Sheriff Ron Tavanello, who had interrogated Robedeaux on November 15, 1985, and made notes of the interrogation. According to Tavanello, Robedeaux admitted to getting into several fights with the decedent. The fights were mostly alcohol-related, but Robedeaux claimed also to have been angry because McKinney had written bad checks. Robedeaux admitted that he struck the decedent hard during what he claimed was their last fight. That fight must have occurred no later than early September, according to Robedeaux's admissions, because he claimed the last time he saw the decedent was around the first week of September. Petitioner argues "In light of this evidence, the jury could have reasonabl[y] found that Robedeaux killed McKinney, not with malice aforethought, but during a domestic argument with McKinney." Appellant's Opening Br. at 37.

The Oklahoma Court of Criminal Appeals disagreed, and we do not find this conclusion based on an unreasonable determination of the facts or involving an unreasonable application of clearly established federal law. If petitioner bases his claim on the notion that the fight to which Robedeaux referred in his police

interrogation actually resulted in the decedent's death, that claim does not square with the evidence. Robedeaux told Deputy Tavanello the fight occurred in early September and that McKinney soon thereafter left him. However, Mrs. Jones, Robedeaux's downstairs neighbor, testified that she heard Robedeaux and McKinney arguing late one night about a week before September 22 and heard McKinney say "don't hit me any more." See Trial Tr., Vol. 5 at 716-19. Even if this later incident was the "fight" to which Robedeaux referred in his police interrogation, it still occurred well before the day of the murder. Other evidence presented at petitioner's trial showed McKinney's murder occurred on September 22. Mrs. Jones saw Nancy McKinney that morning, heard her footsteps early that evening, and heard the thumping and heavier footsteps later that night. Consequently, the record provides no support that the early September argument resulted in Nancy McKinney's death.

On the other hand, petitioner could be asserting that the couple had a different domestic dispute on the night of September 22. This argument, however, would rest not on evidence that a domestic argument actually occurred, but on pure speculation that one *might* have occurred. Speculation about what might have happened, rather than evidence of what really did happen, does not constitute sufficient evidence to require a lesser included offense instruction under Beck. The record is devoid of evidence that Robedeaux and McKinney

argued the night of September 22. There was no testimony regarding shouting or arguing from Robedeaux's apartment on the night of the murder. Mr. and Mrs. Jones testified to hearing footsteps and loud thumping noises directly above their bedroom, but they did not mention talking, yelling, or other sounds of argument. Moreover, the apartment building would have allowed Mr. or Mrs. Jones to hear such sounds because Mrs. Jones had heard Robedeaux and McKinney arguing a week earlier.

In sum, we agree with the state court's conclusion that no evidence exists to support a second degree murder or first degree manslaughter instruction. Consequently, we find the state court's holding regarding petitioner's Beck claim was neither an unreasonable application of clearly established federal law, 28 U.S.C. § 2254(d)(1), nor "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," see id. § 2254(d)(2).[5]

## III.

Petitioner next contends that the trial judge improperly excluded a jury venireperson for cause in violation of his Sixth Amendment right to an impartial

---

[5]As an alternative argument, the state asserts that, under Oklahoma law, second degree murder is no longer a lesser included offense of first degree murder. Because we affirm the district court on the sufficiency of evidence issue, and because the parties only discussed the matter fleetingly in their briefs, we decline to decide this issue.

- 18 -

jury in the sentencing phase of his trial. "[A] juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainright v. Witt, 469 U.S. 412, 420 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). Wainright established that the trial judge's determination of a juror's bias is a factual issue to which we apply a very deferential standard under 28 U.S.C. § 2254. See id. at 429; Castro v. Ward, 138 F.3d 810, 824 (10th Cir.), cert. denied sub nom. Castro v. Gibson, 119 S. Ct. 422 (1998). We must therefore presume the finding of bias is correct unless petitioner can prove otherwise by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

In response to a question about whether she could consider imposing a death sentence, prospective juror Childers stated "no." The judge then asked Childers the following question:

> If you find beyond a reasonable doubt that the Defendant was guilty of Murder in the First Degree and if, under the evidence, the facts and circumstances of the case, the law would permit you to consider a sentence of death, are your reservations about the death penalty such that regardless of the law, the facts and circumstances of the case, you would not consider inflicting the death penalty?

Trial Tr., Vol. 2, at 115. Childers answered "right." The court then dismissed Childers for cause.

In Davis v. Maynard, 869 F.2d 1401, 1408 (10th Cir. 1989), vacated on

other grounds sub nom. Saffle v. Davis, 494 U.S. 1050 (1990), we found an almost identical question "confusing." Nevertheless, applying the deferential standard announced in Witt, we upheld the dismissal for cause of five jurors on facts in which the jurors gave more ambiguous answers than the one given in this case. See id. at 1408-09. We reach the same conclusion here. Childers' answers were not so equivocal as to prove by clear and convincing evidence that she held no biases. In fact, the record shows she was reasonably clear in her refusal to impose the death penalty. Thus, the record fairly supports the trial judge's dismissal for cause.

## IV.

At the sentencing phase of petitioner's trial, the prosecution introduced evidence of numerous unadjudicated crimes or bad acts in order to establish that petitioner was a continuing threat to society. This evidence included petitioner's physical abuse of Nancy McKinney's children, his ex-wife, a previous girlfriend, and her child. Another former girlfriend testified Robedeaux tried to rob her. Petitioner argues that the admission of this evidence was so prejudicial that it rendered his sentence constitutionally unreliable under the Eighth and Fourteenth Amendments.

Petitioner maintains that the prior bad acts evidence "lack[s] the trustworthiness necessary for reliability in capital cases." Appellant's Opening

Br. at 74. However, this circuit has held that "admission of evidence of unadjudicated offenses at a sentencing proceeding does not violate due process." Hatch v. Oklahoma, 58 F.3d 1447, 1465 (10th Cir. 1995); see also Williamson v. Ward, 110 F.3d 1508, 1523 (10th Cir. 1997).[6] We are bound by the decision of prior panels, see United States v. Foster, 104 F.3d 1228, 1229 (10th Cir. 1997), and circuit precedent therefore forecloses this claim.

Circuit precedent also dictates denial of petitioner's claim that Oklahoma's continuing threat aggravating circumstance is unconstitutionally overbroad. The continuing threat factor requires "[t]he existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." Okla. Stat. Ann. tit. 21, § 701.12(7). This court has repeatedly upheld the constitutionality of this aggravating factor, finding it neither unconstitutionally vague nor overbroad. See Ross v. Ward, 165 F.3d 793, 800 (10th Cir. 1999); Castro v. Ward, 138 F.3d 810, 816-817 (10th Cir.), cert.

_____

[6]Several courts upholding admission of prior bad acts evidence during the sentencing phase have noted that the evidence must have some indicia of reliability. See McDowell v. Calderon, 107 F.3d 1351, 1366 (9th Cir. 1997), amended and superseded in part by 116 F.3d 364 (9th Cir. 1997), vacated in part on other grounds on reh'g en banc, 130 F.3d 833 (9th Cir. 1998), cert. denied, 118 S. Ct. 1575 (1998); United States v. Beckford, 964 F. Supp. 993, 999-1000 (E.D. Va. 1997). This court has not directly imposed such a requirement, but even if we were to do so, petitioner provides no evidence that the testimony introduced at trial was actually unreliable. To the contrary, Nancy McKinney's children corroborated each other's testimony, the state introduced hospital photographs corroborating Doris Robedeaux's testimony that she was beaten, and a witness corroborated Lisa Austin's testimony that Robedeaux beat her.

denied sub nom. Castro v. Gibson, 119 S. Ct. 422 (1998); Nguyen v. Reynolds, 131 F.3d 1340, 1353-54 (10th Cir. 1997), cert. denied, 119 S. Ct. 128 (1998).

**V.**

Robedeaux argues that his counsel was constitutionally deficient at the sentencing stage for allegedly failing to fully investigate his mental status. Referring to a 1995 examination by Dr. Philip J. Murphy, a clinical psychologist, which revealed "neuropsychological impairment," petitioner claims his counsel failed to discover this condition and such oversight prejudiced petitioner at sentencing.

Respondent contends that petitioner's failure to raise this issue in his direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA") constitutes procedural default. Oklahoma law requires petitioner to bring ineffective assistance of counsel claims on direct appeal if the claims are grounded in facts discernable from the trial record. See Berget v. State, 907 P.2d 1078, 1084 (Okla. Crim. App. 1995). In state post-conviction proceedings, the OCCA found Robedeaux's ineffective assistance of counsel claim procedurally barred because of his failure to raise it on direct appeal. See Robedeaux v. State, 908 P.2d 804, 808 (Okla. Crim. App. 1995).

Although ineffective assistance of counsel claims may involve unique concerns justifying an exception to the procedural default rule, see Brecheen v.

Reynolds, 41 F.3d 1343, 1363-64 (10th Cir. 1994), we have rejected the idea that ineffective assistance claims are always excused from procedural default, see English v. Cody, 146 F.3d 1257, 1263 (10th Cir. 1998). In English, we held that procedural default may apply if the state "(1) allow[s] petitioner an opportunity to consult with separate counsel on appeal in order to obtain an objective assessment of trial counsel's performance, and (2) provid[es] a procedural mechanism whereby a petitioner can adequately develop the factual basis of his claims of ineffectiveness." Id. Additionally, irrespective of the fact-finding procedures, procedural default applies when petitioner had different trial and appellate counsel and we can resolve the ineffectiveness claim "upon the trial record alone." Id. at 1264.

After carefully reviewing the record, we find petitioner procedurally defaulted his ineffective assistance claim under our holding in English. Robedeaux had different counsel on appeal than at trial.[7] Additionally, the trial

_____

[7]Pete Gelvin was counsel of record on appeal, while Opio Toure and Cindy Foley represented petitioner at trial. All three apparently were attorneys for the same public defender office in Oklahoma City. Petitioner suggests appellate counsel, by virtue of working in the same office as trial counsel, was not sufficiently independent to objectively review trial counsel's performance. A close review of the trial and appellate record reveals no evidence that casts doubt on appellate counsel's independence or performance. Appellate counsel aggressively raised over twenty issues on direct appeal. However, as we note in our discussion infra, he had no reason to question the adequacy of trial counsels' performance regarding the investigation of petitioner's mental state. The law requires different appellate counsel in order to ensure objective review of trial counsel's performance. Based on these facts, Robedeaux received such a review.

record sets forth the scope of trial counsel's investigation into Robedeaux's mental status. Robedeaux's trial counsel hired a qualified psychiatrist, Dr. Nolan Armstrong, to evaluate him prior to trial. Dr. Armstrong examined Robedeaux and also talked at length with Robedeaux's parents. Dr. Armstrong's staff performed four or five tests on petitioner, including an I.Q. exam. Based on the examination and tests, Dr. Armstrong testified at trial that petitioner had an average I.Q., exhibited no evidence of "psychotic process . . . such as hallucinations, or abnormal thought processes," and "seemed like a reasonably logical, sensible guy." Trial Tr., Vol. 8, at 1633. The doctor also explained that Robedeaux's "testing indicated that he was rather emotional and sens[i]tive, daydreamed a lot. An individual who wanted attention, and needed help." Id. at 1634. Dr. Armstrong's main medical conclusions involved the effect of petitioner's diabetes and alcohol problems on his actions. Petitioner is a diabetic and had a problem with alcohol abuse. Dr. Armstrong stated that petitioner often refused to take his insulin shots. According to Dr. Armstrong, this factor, combined with petitioner's frequent drinking and occasional drug use, could lead to periods of diabetic coma in which petitioner would act aggressively but not realize what he was doing. Dr. Armstrong believed that petitioner could have committed violent acts while in a blackout state but that petitioner would pose no threat to society if he treated his diabetes and did not drink.

The record reveals that Robedeaux's trial counsel properly employed a psychiatrist to evaluate petitioner prior to trial. That evaluation was thorough and gave counsel no reason to believe petitioner suffered a condition that required further investigation. This performance differed significantly from cases in which counsel inadequately investigated or failed to investigate information for the sentencing phase. See Brecheen, 41 F.3d at 1367 (listing cases); Stafford v. Saffle, 34 F.3d 1557, 1563-64 (10th Cir. 1994) (finding failure to investigate constituted deficient performance). Counsel's performance was clear from the trial record. Therefore, petitioner procedurally defaulted this claim. See English, 146 F.3d at 1264.

## VI.

Finally, petitioner claims cumulative errors rendered his trial fundamentally unfair. Since we find no constitutional errors in this review, no prejudicial cumulative error can exist. See, e.g., Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998), cert. denied, 119 S. Ct. 1266 (1999).

Accordingly, we deny Mr. Robedeaux's petition for a writ of habeas corpus. AFFIRMED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge